Ms. Gwen Schaper State Long-Term Care Ombudsman 600 South Calhoun Street, Suite 270 Tallahassee, Florida 32301
Dear Ms. Schaper:
You ask substantially the following questions:
1. Does the State Long-Term Care Ombudsman have authority to establish directives, policies and procedures for the operation of the ombudsman program?
2. Does the State Long-Term Care Ombudsman have the authority to approve policy directives proposed by the State Ombudsman Council?
3. What powers and duties does the State Long-Term Care Ombudsman have over the budget of the ombudsman program?
4. What powers does the State Long-Term Care Ombudsman have over the staffing of the ombudsman program?
In sum:
1. 2. While the State Long-Term Care Ombudsman plays an integral role in establishing directives, policies and procedures for the operation of the ombudsman program, there is no statutory authority for the ombudsman to independently establish such operating guidelines, nor may the ombudsman solely approve or veto policy directives suggested by the State Long-Term Care Ombudsman Council.
3. The State Long-Term Care Ombudsman has authority to make expenditures for the purposes set forth in section 400.0065, Florida Statutes, within the limitations of the budget appropriated for the ombudsman program.
4. The State Long-Term Care Ombudsman is authorized to employ personnel needed to perform the functions of the Office of the State Long-Term Care Ombudsman.
In order to be eligible to receive an allotment of funds authorized and appropriated under the federal Older Americans Act,[1] the state must establish and operate an Office of State Long-Term Care Ombudsman (ombudsman office) to carry out a long-term care ombudsman program.[2] The ombudsman office is located for administrative purposes in the Department of Elderly Affairs and is headed by the State Long-Term Care Ombudsman (ombudsman) who "shall serve on a full-time basis and shall personally, or through representatives of the office, carry out the purposes and functions of the Office of State Long-Term Care Ombudsman in accordance with state and federal law."[3] The stated intent of the Legislature is "to utilize voluntary citizen ombudsman councils under the leadership of the ombudsman, and through them to operate an ombudsman program. . . ." (e.s.)[4]
The ombudsman is appointed by and serves at the pleasure of the State Long-Term Care Ombudsman Council (council).[5] The ombudsman's authority is set forth in section 400.0065, Florida Statutes. One of the stated purposes of the ombudsman office is to "[p]rovide administrative and technical assistance to state and district ombudsman councils."[6] The ombudsman office also serves to:
"Analyze, comment on, and monitor the development and implementation of federal, state, and local laws, rules, and regulations, and other governmental policies and actions, that pertain to the health, safety, welfare, and rights of the residents, with respect to the adequacy of long-term care facilities and services in the state, and recommend any changes in such laws, rules, regulations, policies, and actions as the office determines to be appropriate."[7]
The duties and authority of the ombudsman are to:
"(a) Assist and support the efforts of the State Long-Term Care Ombudsman Council in the establishment and coordination of district ombudsman councils throughout the state.
(b) Perform the duties specified in state and federal law, rules, and regulations.[8]
(c) Within the limits of federal and state funding authorized and appropriated, employ such personnel, including staff for district ombudsman councils, as are necessary to perform adequately the functions of the office and provide or contract for legal services to assist the state and district ombudsman councils in the performance of their duties. Staff positions for each district ombudsman council may be established as career service positions, and shall be filled in consultation with the respective district ombudsman council.
(d) Contract for services necessary to carry out the activities of the office.
(e) Apply for, receive, and accept grants, gifts, or other payments, including, but not limited to, real property, personal property, and services from a governmental entity or other public or private entity or person, and make arrangements for the use of such grants, gifts, or payments.
(f) Perform the duties specified in state and federal law without interference by officials of the Department of Elderly Affairs, the Agency for Health Care Administration, or the Department of Health and Rehabilitative Services.[9] The ombudsman shall report to the Governor, the President of the Senate, and the Speaker of the House of Representatives whenever organizational or departmental policy issues threaten the ability of the Office of State Long-Term Care Ombudsman to carry out its duties under state or federal law.
(g) Coordinate, to the greatest extent possible, state and district ombudsman services with the protection and advocacy systems for individuals with developmental disabilities and mental illnesses and with legal assistance programs for the poor through adoption of memoranda of understanding and other means."[10]
While the duties and authority of the ombudsman set forth in federal law are closely aligned with those cited above, 42 U.S.C. s. 3025(a)(1), provides that in order for a state to be eligible to receive grants under the State and Community Programs on Aging, it must designate a state agency as the sole agency to:
"(A) develop a State plan to be submitted to the Assistant Secretary for approval under section 3027 of this title;
(B) administer the State plan within such state;
(C) be primarily responsible for the planning, policy development,administration, coordination, priority setting, and evaluation ofall State activities related to the objectives of this chapter[.]" (e.s.)
The Department of Elderly Affairs is the agency designated to fulfill these federal requirements and specifically to be primarily responsible for policy development, administration, coordination, and priority setting in carrying out the goals of the federal law.[11] In regard to policies and procedures to carry out the State Long-Term Care Ombudsman program, 42 U.S.C. s. 3058g(a)(5), authorizes the ombudsman to designate local entities, but recognizes that the state agency "shall establish, in accordance with the Office [of the Long-Term Care Ombudsman], policies and procedures for monitoring local Ombudsman entities designated to carry out the duties of the Office."[12] Federal law further provides that the state agency must require the ombudsman office to
"(1) prepare an annual report —
* * *
(F) providing policy, regulatory, and legislative recommendations to solve identified problems, to resolve the complaints, to improve the quality of care and life of residents, to protect the health, safety, welfare, and rights of residents, and to remove the barriers[.][13]
* * *
(4)(A) not later than 1 year after September 30, 1992, establish procedures for the training of the representatives of the Office, including unpaid volunteers, based on model standards established by the Director of the Office of Long-Term Care Ombudsman Programs, in consultation with representatives of citizen groups, long-term care providers, and the Office[.]"[14]
Section 400.0087, Florida Statutes, makes the Department of Elderly Affairs responsible for monitoring the district ombudsman councils and states that "[t]he department, in consultation withthe ombudsman and the State Long-Term Care Ombudsman Council, shall adopt rules to establish policies and procedures for the monitoring of district ombudsman councils." (e.s.)
Questions One and Two
The ombudsman acts in an advisory capacity, working with the Department of Elderly Affairs and the State Long-Term Care Ombudsman Council to identify areas of concern in the provision of services under the Older Americans Act and recommends alterations in the policies and directives governing the ombudsman program. The role of the State Long-Term Care Ombudsman is more in the nature of an executive director who advocates on behalf of the individuals who receive long-term care services. The ombudsman has no independent authority to establish directives, policies and procedures for the operation of the ombudsman program, but rather may provide input to the Department of Elderly Affairs and the ombudsman council regarding such matters. As an appointed head, serving at the pleasure of the ombudsman council, the ombudsman has authority limited to that which has been granted by the Legislature.[15]
Thus, while the ombudsman plays an integral role in establishing directives, policies and procedures for the operation of the ombudsman program, there is nothing in federal law or the Florida Statutes that would authorize the ombudsman to independently establish such operating guidelines. Further, no federal or state law authorizes the ombudsman to solely approve or veto policy directives suggested by the State Long-Term Care Ombudsman Council.
As noted above, should organizational or departmental policy issues threaten the ombudsman office's ability to carry out its duties, the ombudsman's recourse is to report such difficulties to the Governor, the President of the Senate, and the Speaker of the House of Representatives. In such an event, appropriate legislative action may be taken to address the matter.
Question Three
Section 400.0087(3), Florida Statutes, provides:
"The Department of Elderly Affairs shall ensure that the ombudsman program has the objectivity and independence required to qualify it for funding under the federal Older Americans Act, and shall carry out the long-term care ombudsman program through the Office of the State Long-Term Care Ombudsman Council. The Department of Elderly Affairs shall also:
(a) Receive and disburse state and federal funds for purposes that the state ombudsman council has formulated in accordance with the Older Americans Act.
(b) Act as liaison between the federal program representatives, the staffs of the state and district ombudsman councils, and members of the state and district ombudsman councils." (e.s.)
A review of the 1997 Appropriations Act indicates that funds for the Older Americans Act Program and the Long-Term Care Ombudsman Council were appropriated to the Department of Elderly Affairs.[16] Thus, the funding of the ombudsman office is appropriated through the Department of Elderly Affairs.[17]
However, the statute further recognizes that the appropriated funds are to be disbursed for purposes that the state ombudsman council has formulated in accordance with the Older Americans Act. The ombudsman council, therefore, has an integral role in determining how funds will be spent.
The ombudsman's state statutory authority over the expenditure of funds is governed by section 400.0065(2), Florida Statutes, wherein the ombudsman has the duty and authority to:
"(c) Within the limits of federal and state funding authorized and appropriated, employ such personnel, including staff for district ombudsman councils, as are necessary to perform adequately the functions of the office and provide or contract for legal services to assist the state and district ombudsman councils in the performance of their duties. Staff positions for each district ombudsman council may be established as career service positions, and shall be filled in consultation with the respective district ombudsman council.
(d) Contract for services necessary to carry out the activities of the office.
(e) Apply for, receive, and accept grants, gifts, or other payments, including, but not limited to, real property, personal property, and services from a governmental entity or other public or private entity or person, and make arrangements for the use of such grants, gifts, or payments."
Thus, the ombudsman has authority to make expenditures for the hiring of personnel within the limitations of the budget appropriated for the ombudsman program. Moreover, any action taken by the ombudsman in exercising the powers and authority granted by statute would generally be constrained by the statutes and administrative rules that apply to the conduct of business by a state governmental entity.[18]
 Question Four
The plain language of the statute gives the ombudsman the authority to employ such personnel needed to perform the functions of the office. As an administrative office, the ombudsman has only such authority as is specifically granted by statute.[19] Further, the independence of the ombudsman with respect to such matters is constrained by other provisions of law contained in Chapter 110, Florida Statutes.[20] Thus, with regard to employment authority, it is my opinion that the ombudsman may, within appropriated funding limits, hire necessary personnel to carry out the functions of the ombudsman program.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] 42 U.S.C. Ch. 35.
[2] Section 400.0061(1), Fla. Stat. See also,42 U.S.C. § 3058g(a)(1) and 42 U.S.C.A 3027(a)(12), stating that "[t]he plan shall provide assurances that the State agency will carry out, through the Office of the State Long-Term Care Ombudsman, a State Long-Term Care Ombudsman program in accordance with section 3058g of this title and this subchapter."
[3] Section 400.0063, Fla. Stat.
[4] Section 400.0061(2), Fla. Stat.
[5] Section 400.0063(2), Fla. Stat. See also, s. 400.0063(3), Fla. Stat., creating in the ombudsman office the position of legal advocate, selected by and serving at the pleasure of the ombudsman, who assists the ombudsman in carrying out the duties of the office, assists the councils in carrying out their responsibilities, initiates and prosecutes legal and equitable actions to enforce the rights of long-term care facility residents, and serves as legal counsel to the state and district councils or individual members.
[6] Section 400.0065(1)(f), Fla. Stat.
[7] Section 400.0065(1)(g), Fla. Stat.
[8] 42 U.S.C. s. 3058g(a)(3), sets forth the functions to be performed by the ombudsman, including, specific to this inquiry, to:
"(F) provide administrative and technical assistance to entities designated under paragraph (5) to assist the entities in participating in the program;
(G)(i) analyze, comment on, and monitor the development and implementation of Federal, State, and local laws, regulations, and other governmental policies and actions, that pertain to the health, safety, welfare, and rights of the residents, with respect to the adequacy of long-term care facilities and services in the State;
(ii) recommend any changes in such laws, regulations, policies, and actions as the Office determines to be appropriate; and
(iii) facilitate public comment on the laws, regulations, policies, and actions;
* * *
(I) carry out such other activities as the Assistant Secretary determines to be appropriate."
[9] The Department of Health and Rehabilitative Services was redesignated as the Department of Children and Family Services by s. 5, Ch. 96-403, Laws of Florida, and the Department of Health was created by s. 8, Ch. 96-403, Laws of Florida.
[10] Section 400.0065(2), Fla. Stat. (1997).
[11] See, s. 400.0087(3), Fla. Stat., stating that "[t]he Department of Elderly Affairs is the designated state unit on aging for purposes of complying with the federal Older Americans Act" and s. 430.03(1), Fla. Stat., stating that one of the purposes of the Department of Elderly Affairs is to "[s]erve as the primary state agency responsible for administering human services programs for the elderly and for developing policy recommendations for long-term care."
[12] 42 U.S.C. s. 3058g(a)(5)(D)(i).
[13] 42 U.S.C. s. 3058g(h)(1)(F). See also, 42 U.S.C. s. 3058g(h)(2), requiring the ombudsman office to
"analyze, comment on, and monitor the development and implementation of Federal, State, and local laws, regulations, and other government policies and actions that pertain to long-term care facilities and services, and to the health, safety, welfare, and rights of residents, in the State, and recommend any changes in such laws, regulations, and policies as the Office determines to be appropriate[.]"
[14] 42 U.S.C. s. 3058g(h)(4)(A).
[15] See generally, Lee v. Division of Florida Land Sales andCondominiums, 474 So.2d 282 (Fla. 5th DCA 1985) (administrative agency has only such power as expressly or by necessary implication is granted by legislative enactment; it may not increase its own jurisdiction and, as a creature of statute, has no common-law jurisdiction or inherent power); Grove Isle, Ltd. v.State Department of Environmental Regulation, 454 So.2d 571 (Fla. 1st DCA 1984) (administrative bodies or commissions, unless specifically created in the Constitution, are creatures of statute and derive only the power specified therein).
[16] See, Specific Appropriations 412 and 423, s. 3, Ch. 97-152, Laws of Florida (1997).
[17] See, s. 400.0067(6), Fla. Stat., providing that "[t]he Department of Elderly Affairs shall make a separate and distinct request for an appropriation for all expenses for the state and district ombudsman councils."
[18] See, e.g., Part 1, Ch. 287, Fla. Stat., governing the procurement of commodities, insurance, and contractual services by an agency of the executive branch of state government.
[19] See, n. 15, supra.
[20] See, s. 110.201, Fla. Stat., providing that the Department of Administration shall develop and administer uniform personnel rules relating to employees and positions in the career service and requiring employing agencies to operate within such uniform rules. See also, s. 110.203(1), Fla. Stat. ("agency" includes any official, officer, commission, board, authority, council, committee, or department within the executive branch of state government); Op. Att'y Gen. Fla. 80-29 (1980) (independent statutory entity within definitional purview of Ch. 110, Fla. Stat.). And see, s. 110.205(1), Fla. Stat., providing that the career service applies to all positions not specifically exempted by Part II, Ch. 110, Fla. Stat.